FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

2020 NOV 13  P 2: 27

ELLA TOTH,                    :
                                          CIVIL FILE ... VIRGINIA
JAMES TOTH                    :
                                          NO. 3:20-cv-00160-MHL
  Plaintiffs,                 :

        v.                    :

VIRGINIA CREDIT UNION;        :

  CENLAR, FSB;                :

  Defendants

---

## PLAINTIFFS' FIRST AMENDED COMPLAINT FOR ACCOUNTING, DAMAGES AND OTHER RELIEF

COMES NOW, Plaintiffs, Ella Toth ("Plaintiff" or "Mrs. Toth"), and her husband, James Toth ("Plaintiff" or "Mr. Toth"; collectively "The Toths"), and respectfully file their ***Plaintiffs' First Amended Complaint for Accounting, Damages, and Other Relief***, as follows:

I.                    INTRODUCTION

Defendants in this matter, have stepped beyond their respective rights and abilities and have cause Plaintiffs serious harm and injury resulting in liability for damages to the Plaintiffs.

Defendants plan to foreclose as soon as humanly possible, without adhering to the Virginia Real Property Laws and black letter foreclosure statutes. Plaintiffs

contend that defendants actions have been and will continue to be in violation of the contacts signed by Plaintiffs, that the defendants are not holders in due course, and lack the required interest in the loan and/or property, to have standing to foreclose. Further, defendants have not followed the conditions precedent that would allow them to foreclose.

II.                                        THE PARTIES

1.    Plaintiff James Toth, and Plaintiff Ella Toth, during all times relevant have owned and domiciled at 7050 Strath Road, Henrico, Virginia, 23331, in Henrico County.

2.    **Defendant, Virginia Credit Union**, ("VCU"), during all times relevant has been a for profit Banking entity within the United States, organized and existing under the laws of Virginia.  Service of process has previously been perfected upon VCU.

3.    **Defendant Cenlar, FSB** ("Cenlar"), during all times relevant, has been a subsidiary of CitiMortgage, Inc. who services mortgage loans and collects debts for other businesses.  Service of process has been previously perfected upon Cenlar.

4.    Plaintiffs are informed and believes, and thereupon allege that at all times herein mentioned, each of the defendants were the agents, employees, servants, and/or the joint-venturers of the remaining defendants, and in taking the actions

alleged herein below, were acting within the course, and scope of such agency, employment and/or joint venture.

III.                JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. §§1331, AS "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States" (28 U.S.C.A. § 1331 (West)).

6.  This Court further has jurisdiction pursuant to 28 U.S.C.A. § 1367 (a) "Except as provided in subsections (b) and (c) .. in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims... that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.. This Court has supplemental jurisdiction over Plaintiffs' state law claims.

7.      The acts and/or actions complained of herein took place in, or effected citizens living within this Court's jurisdiction, as this is the closest US District Court for the Plaintiffs.

8.      Venue is proper pursuant to 28 U.S.C. §1391(b)(2)  in this Court because "Venue is appropriate in the county in which the real property or a substantial part thereof is located.

IV.                FACTS PERTINENT TO ALL CLAIMS FOR RELIEF

9.      In early June, 2008, the Toths entered into a mortgage loan contact evidence by a Promissory Note *EXHIBIT A* and Deed of Trust ("DOT") *EXHIBIT B*  to finance the real property located at 7050 Strath Road, Henrico, Virginia, 23331, in Henrico County.

10.     For eight (8) years, the Toths had timely paid their loan.

11.     In May, 2016, Mrs. Toth was diagnosed with Rocky Mountain Spotted Fever, she was ill for an extended period of time.

12.     The extensive medical examinations, and tests, were required, and Mrs. Toth began exhibiting signs of cognitive disabilities, requiring further testing.

13.     The second week of July, 2016, Mr. Toth was injured in a motor vehicle accident caused by an uninsured motorist, causing him to be out of work for four (4) months.

14.     The short term disability did not cover the bills, and Mr. Toth was left with $40,000.00 in medical debt for his injuries.

15.     Immediately prior to Christmas that same year of 2016, The Toths learned from Mr. Toth's injury attorney that the motor vehicle insurance was not going to pay out unless there was a jury trial.

16.     Mr. Toth still requires a hip replacement and knee surgery from the vehicle accident.

17.     Between January and July of 2017, The Toths diligently attempted to obtain assistance through HARP, and other mortgage assistance programs.

18.     Plaintiffs had a hardship, and were looking for a loan modification, so that they would not get so far behind, that they would not be able to catch up.

19.     Finally, in late July, 2017, the Toths signed a formal agreement with CC to obtain a loan modification; which they desperately needed to remain in their home.

20.     Steve Kay at CC, Meriquest USA, informed the Toths that he would obtain either a forbearance or loan modification to allow for resumption of mortgage payments.

21.     According to Steve Kay, the forbearance or loan modification would result in lower mortgage payments, due to interest rate drops after they signed the original loan documents.

22.     In late January, 2017 The Toths signed a formal agreement with Steve Kay at "Canyon Capitol" ("CC") to obtain a loan modification.

23.     The Toths also were assisted by Ani Bazikyan from "Expert Legal Services" ("ELS"), who would go on to advise the Toths not to talk to VCU about the loan.

24.      CC and ELS, rather than the Plaintiffs, communicated with Cenlar and VCU about the loan.

25.     Early October, 2017 the Toths received Notice of Default from VCU, claiming the Toths were in arrearage of  $9,133.00.

5

26.     Late January, 2018, the Toths received a notice from VCU that their loan was in arrearage of $17,906.79.

27.     Close to that same time. January 2018, the Toths received a repayment schedule showing that they must pay $4761.60 on the first day of every month beginning February 01, 2018 through July 2018 to bring their account current.

28.     By early May, 2018, the claim was a past due balance of $240,299.24.

29.     The attempts, by CC and ELS, to obtain a forbearance or modification were getting run arounds, and refusals to provide the payoff amount.

30.     ELS provided the Toths with a bankruptcy(bk) petition and advised that the Toths should prepare to file the documents.

31.     When the bk petition was filed, the clerk told the Toths that the filing was deficient and unlawfully drafter by an undisclosed third party.

32.     Mid-August 2018, VCU notified the Thots that the loan mod had been denied because their reported income was sufficient to make the monthly payments, and because they had filed in bk court.

33.     Around that same time period, August 2018, the Toths were notified by VCU that they had closed Mrs. Toth's checking account, because she had lost her job with the State of Virginia.

34.    The Toths appealed the denial of the loan modification, and on December 30, 2019, VCU denied the Toth's appeal on the grounds that the Toths had insufficient monthly income.

35.    Prior to filing their civil action, the Toths had ELS to send out a RESPA request.

36.    For two years, the Toths were in contact with Steve Kay and Ms. Bazikyan and CC every other day, to every 2-3 days attempting to obtain the loan mod, or something that would allow them to keep their home.

37.    The Toths are not dead beats, and have been forced to get without surgeries that would make their lives easier.

38.    The entities that have attempted to assist the Toths, were run around and around with nothing ever being resolved.

39.    Every time the Toths were told that they were getting close to an agreement, they learned that they had been denied again, when the calls and letters would come to the Toths' home, and the stress levels would increase dramatically.

40.    Prior to filing this civil action, the Toths gathered all the information they could.

41.    The Toths are informed and believe, and has learned from the information that has led to the allegations within  from:

      (a)    A title report and analysis of Henrico County Official Records;

(b)   Direct and written communications with defendants;

(c)   News articles, research papers and reports;

(d)   Publicly available securitization documents;

(e)   Complaints filed with Attorneys General from numerous states;

(f)    Professional review of all documents recorded in the Official Records by a qualified professional.

42.   The Toths have had to fight hard trying to keep their home.

43.   The Toths have only wanted to find a way to pay their mortgage, and remain in their home.

44.   The Toths have acted with clean hands.

**FIRST CLAIM FOR RELIEF**
**BREACH OF CONTRACT**
**(As Against Both Defendants)**

45.   The Toths allege that they had entered into two contracts with Defendant VCU; one a Promissory Note, and the other was the DOT.

46.   When the servicing rights were sold to Cenlar, Cenlar became part of the contracts with the Toths, and became obligated to adhere to the contracts as well.

47.   Plaintiffs allege that both VCU and Cenlar had an obligation to act in accordance with the DOT.

48.   Plaintiffs allege that DOT, p. 11 states that the Borrowers had a Right to Reinstate After Acceleration, if they met certain conditions.

49.     The Toths allege that they had not been properly noticed of acceleration of the debt or their right to reinstatement, in accordance with the DOT requirements.

50.     Further, the Toths allege § 22 of the DOT states: "Lender shall[1] give notice to Borrower prior to acceleration following Borrower's breach ...in this Security Instrument...The notice shall specify:

> (a)  the default;
>
> (b)  the action required to cure the default;
>
> (c)  a date not less that 30 days from the date the notice is given...by which default must be cured; and
>
> (d)  that failure to cure on or before the date specified...may result in acceleration...and sale of the Property... shall further inform...of the right to reinstate ...and the right to bring a court action... and reasonable attorney's fees.

51.     The DOT goes on to state that "If lender invokes the power of sale, lender or Trustee shall give to Borrower, the owner of the Property, and all other persons,

---

[1] As the district court emphasized, the word "shall," when used in a statutory context, is generally construed to be **mandatory**. *Holland v. Pardee Coal Co.*, 269 F.3d 424, 431 (4th Cir. 2001).

As the Fourth Circuit has explained, in interpreting federal statutes the word "may" evidences "a congressional intent to grant courts ... discretion," in contrast to the word "*shall*," which connotes that "Congress clearly **did not manifest an intent to confer such discretion**." (*In re Qimonda AG Bankr. Litig.*, 433 B.R. 547, 565 (E.D. Va. 2010))

*DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 325 (4th Cir.2008); see also *United States v. Monsanto*, 491 U.S. 600, 607, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989) (holding that Congress, in using the phrase "shall order" in a forfeiture statute, "could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied"). *In re Qimonda AG Bankr. Litig.*, 433 B.R. 547, 565 (E.D. Va. 2010).

notice of sale as required by applicable law...notice of sale by advertising, ...once a week..."

52.   Plaintiffs allege that VCU and Cenlar (as loan servicer) had a contractual obligation to notify Plaintiffs  prior to acceleration of the debt, but failed to notify them.

53.   Plaintiffs allege that VCU and Cenlar (as loan servicer) had a contractual obligation to notify Plaintiffs of the default, the action required to cure the default, a date by which the default must be cured, and that failure to cure would result in acceleration and sale of the property.

54.   Plaintiffs allege that because of the breaches by VCU and Cenlar (as loan servicer), requiring that Plaintiffs be noticed of these issues, that they were not allowed to try to work with defendants personally.

55.   Plaintiffs allege that VCU's and Cenlar's (as loan servicer) failure to contact Plaintiffs in writing as required, prevented Plaintiffs' ability to obtain a loan modification, or forbearance directly from VCU.

56.   Plaintiffs allege that it came to the point that they had to wait until the bankruptcy attorney vultures came calling upon them, before they knew they were fixing to be foreclosed upon.

57.    Every time the Plaintiffs learned of a new foreclosure, they had to contact CC and ELS only to find out that VCU and/or Cenlar had refused to work with anyone attempting to obtain a payoff amount.

58.    Plaintiffs allege that VCU's and Cenlar's refusal to provide a loan modification, refusal to provide a forbearance that the Toths could afford, and the refusal to provide loan payoff amounts, caused investors that CC and ELS had been working with, to back out of providing monetary assistance to the Toths.

59.    Plaintiffs allege that VCU and Cenlar (as loan servicer) had actual knowledge when Plaintiffs were extremely ill, or attempting to recover from accidents, that the stress would cause Plaintiffs recovery to be delayed.

60.    Plaintiffs allege that regardless of the consequences of their actions, both VCU and Cenlar continued to refuse to work with Plaintiffs when they clearly qualified, and were clearly eligible for assistance.

61.    As a direct and proximate cause of VCU and Cenlar's actions/inactions, Plaintiffs have been harmed, injured, and suffered from actual damages.

WHEREFORE Plaintiffs pray the relief shown in their Final Prayer for Relief

## SECOND CLAIM FOR RELIEF
## VIOLATIONS OF FEDERAL DEBT COLLECTION PRACTICES ACT
### (As Against Cenlar)

62.    Plaintiffs allege that Cenlar violated the Federal Debt Collection Practices Act ("FDCPA").

63.    Plaintiffs allege that they are consumers  which according to FDCPA 15 U.S.C.A. § 1692a(3) is defined as "any natural person obligated or allegedly obligated to pay any debt.

64.    Plaintiffs allege that their Loan, is a "Debt" defined as "any obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment" (15 U.S.C.A. § 1692a(5)).

65.    Plaintiffs contend that the debt was created for the purpose of purchasing a one-family residence, and therefore primarily for personal, family, and household purposes.

66.    Plaintiffs allege that Cenlar is a debt collector under FDCPA.

67.    FDCPA defines a debt collector as

> "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

15 U.S.C. § 1692a(6) (emphasis added).

68.    In the US Court of Appeals for the Fourth Circuit, U S Supreme Court Affirmed the Fourth Circuit's ruling which stated

> "...15 U.S.C.  § 1692a(6) 15 U.S.C. § 1692a(6) (emphasis added). Stated more simply, this provision defines a debt collector as (1) a

person whose principal purpose is to collect debts; (2) a person who
regularly collects debts owed to another; or (3) a person who collects
its own debts, using a name other than its own as if it were a debt
collector".

*Henson v. Santander Consumer USA, Inc.,* 817 F.3d 131, 136 (4th Cir. 2016), aff'd,

137 S. Ct. 1718, 198 L. Ed. 2d 177 (2017).

69.     Further, the second part of § 1692a(6) defines the classes of persons that are

excluded form the definition of debt collector; relevant here, exclusion (F)(iii) the

simplified version of the statute: ... See S. Rep. No. 95–382, at 3–4 (1977), as

reprinted in 1977 U.S.C.A. 1695, 1698 ("[T]he committee does not intend the

definition [of debt collector] to cover the activities of ... mortgage service companies

and others who service outstanding debts for others, **so long as the debts were not

in default when taken for servicing**" (emphasis added)).

70.     Plaintiffs allege that when Cenlar or VCU actually did contact Plaintiffs to

threaten foreclosure, each time, the amount of arrears was not the correct amount.

71.     Plaintiffs allege that the repeated failure to provide the correct amount in

arrears, was false, deceptive and/or misleading.

72.     Pursuant to 15 U.S.C. § 1692e, a debt collector may not use any false,

deceptive, or misleading representation or means in connection with the collection

of any debt.

73.     Plaintiffs allege Cenlar's quoting incorrect amounts of arrearages, is a false,

deceptive, or misleading representation or means.

13

74.     By reason of the conduct alleged herein, Defendant Cenlar has violated 15 U.S.C. § 1692e and thereby subject to statutory damages of One Thousand Dollars ($1,000.00) per violation for individual cases.

75.     As a direct and proximate cause of Cenlar's repeatedly giving the incorrect amounts in the dunning letters received by Plaintiffs, that Plaintiffs have been harmed and injured, and made to suffer actual damages in the form being unable to contract with a different lender.

76.     As a direct and proximate cause of Cenlar's refusal to provide the correct amount of arrears, Plaintiff's right to contract have been interfered with, causing harm and damages to Plaintiffs.

WHEREFORE, Plaintiffs are entitled to $1000.00 per occurrence, costs for actual damages that Plaintiffs will provide before trial, and any other damages that this Court feels is fair and just.

V.                    PRAYER FOR RELIEF

Plaintiffs pray that this Court will find in their favor, and against defendants on all their claims for relief, and will call a jury for all questions of fact.  Plaintiffs further pray that the court will find in their favor, and award them as follows:

a) First Claim for Relief:  Breach of Contract, that the Court will find in the Toths' favor and will award them all court costs, attorney's fees should they locate and retain competent legal counsel, and damages in the amount of their home;

b) Second Claim for Relief:  Violations of FDCPA.  Plaintiffs will be able to

prove at least two violations; Plaintiffs seek $1,000.00 for each occurrence, and their actual damages which under the circumstances, with the illnesses and injuries suffered while defendants were refusing to work with them, and refusing to allow and aid others in working with Plaintiffs, caused undue stress and prolonged illness and recovery periods, Plaintiffs will need to collect their receipts and put a definite dollar amount of what they claim are their damages.

c)    That the Court grant any other awards the Plaintiffs are not aware they are eligible for, and did not claim, and/or whatever the Court deems is fair and just.

Respectfully submitted, this 13th day of November, 2020

_____                    _____
James Toth                                                         Ella Toth

7050 Strath Road
Henrico, VA  23231

CERTIFICATION

On this, the 13th day of November, 2020, I declare under penalty of perjury that:

(1) No attorney has prepared, or assisted in the preparation of this document.

_____                    _____
James Toth                                                         Ella Toth

## CERTIFICATE OF SERVICE

I hereby Certify, that I have, this 5th day of June, 2020 served a true and correct copy of the foregoing Response in Opposition to Motions to Dismiss, upon defendants, through their attorneys on file, via USPS First Class Mail, with proper postage affixed and addressed as follows:

Walter J. Buzzetta
STRADLEY RONON STEVENS
& YOUNG, LLP
2000K Street, N.W.,
Suite 700
Washington, DC  20006
(For Cenlar)

Justin S. Feinman
WILLIAMS MULLEN, P.C.
200 South 10th Street, 16th Floor
Richmond, VA  23219
(for VCU)

James or Ella Toth

16