IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**JAMES TOTH**, *et al.*,

    Plaintiffs,

v.                                                                                                     Civil Action No. 3:20cv160

**VIRGINIA CREDIT UNION**, *et al.*,

    Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on two motions:

(1)     Defendant Virginia Credit Union, Inc.'s ("Virginia Credit Union") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)[1] (the "Virginia Credit Union Motion to Dismiss"), (ECF No. 30); and,

(2)     Defendant Cenlar, FSB's ("Cenlar") (collectively, with Virginia Credit Union, the "Defendants") Motion to Dismiss pursuant to Rule 12(b)(6) (the "Cenlar Motion to Dismiss," collectively with the Virginia Credit Union Motion to Dismiss, "the Motions"), (ECF No. 32).

Plaintiffs James and Ella Toth (collectively, the "Plaintiffs" or the "Toths") responded to the Motions to Dismiss, (ECF No. 34), and the Defendants replied, (ECF Nos. 35, 36).

These matters are ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1331[2]

---

[1] Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

[2] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331(a). In their Amended Complaint, the Toths allege against Cenlar a violation of the Fair Debt Collections Practices Act 15 U.S.C. § 1692 *et seq.* ("FDCPA"). (Am. Compl. ¶¶ 62–76, ECF No. 29.)

and 1367(a).[3]  For the reasons that follow, the Court will grant the Motions to Dismiss and dismiss the Amended Complaint without prejudice.

## I. Factual and Procedural Background

In their two-count Amended Complaint, the Toths bring breach of contract claims against both Defendants and one claim for violation of the FDCPA against Cenlar. (Am. Compl. ¶¶ 45–60, 62–73.) The Toths allege that Defendants breached the terms of a Promissory Note and Deed of Trust when they provided the Toths with improper notice of default on their mortgage loan and refused to grant them a modification on the loan. (*Id.* ¶¶ 49–53, 58.) As to Cenlar, the Toths allege it violated the FDCPA by employing "false, deceptive, or misleading representation or means in connection with the collection of [their] debt" due to "Cenlar's quoting incorrect amounts of arrearages." (*Id.* ¶¶ 71–73.)

---

[3] The Court exercises supplemental jurisdiction over the Toths' additional Virginia state-law claims pursuant to 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."). Along with their FDCPA claim, the Toths bring one state-law claim for breach of contract based on the Defendants' alleged breach of the Promissory Note and the Deed of Trust.

A. **<u>Factual Allegations</u>**[4]

In June 2008, the Toths purchased a property located at 7050 Strath Road, Henrico, Virginia, 23331 (the "Property"). (Am. Compl. ¶ 1.) To purchase the home, the Toths entered into a mortgage loan contract, evinced by a Promissory Note and a Deed of Trust, with Virginia Credit Union. (*Id.* ¶ 9.) According to the Toths, Virginia Credit Union is "a for profit Banking entity within the United States." (*Id.* ¶ 2.) At an unspecified time, Virginia Credit Union sold its mortgage servicing rights to Cenlar, "a subsidiary of CitiMortgage, Inc. who services mortgage loans and collects debts for other businesses." (*Id.* ¶¶ 3, 46.)

The Toths state that they had "timely paid their loan" for eight years. (*Id.* ¶ 10.) However, in May 2016, the Toths began to have financial difficulties when "Mrs. Toth was diagnosed with Rocky Mountain Spotted Fever." (*Id.* ¶ 11.) Later that same year, in July 2016, "Mr. Toth was injured in a vehicle accident caused by an uninsured motorist, causing him to be out of work for four (4) months." (*Id.* ¶ 13.) Due to their financial difficulties, the Toths defaulted on their mortgage payments even though they "diligently attempted to obtain assistance through HARP,[5] and other mortgage assistance programs." (*Id.* ¶ 17.) In July 2017, the Toths entered into an agreement with Canyon Capitol, a third party, to assist them in obtaining a loan modification from Virginia Credit Union. (*Id.* ¶ 19.) However, their efforts

---

[4] For the purpose of the Rule 12(b)(6) Motions to Dismiss, "a court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.,* 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus.,* 637 F.3d 435, 440 (4th Cir. 2011)).

[5] The Home Affordable Refinance Program ("HARP") is a federal loan assistance program available through the Federal Housing Finance Agency created to "assist homeowners unable to refinance their loans, due to a decline in their home value." *See* FED. HOUS. FIN. AGENCY, *Home Affordable Refinance* Program, https://www.fhfa.gov/PolicyProgramsResearch/Programs/Pages/HARP.aspx.

were not successful, (*id.* ¶ 29), and in October 2017, they received a Notice of Default from Virginia Credit Union, stating an arrearage of $9,133.00 (the "October 2017 Notice"). (*Id.* ¶ 25.)[6] In January 2018, the Toths received another notice from Virginia Credit Union indicating "that their loan was in arrearage of 17,906.79." (the "January 2018 Notice"). (*Id.* ¶ 26.) The January 2018 Notice provided the Toths with a payment schedule of $4,761.60 in monthly payments to allow the Toths to "bring their account current." (*Id.* ¶ 27.) By May 2018, the "claim was a past due balance of $240,299.24." (*Id.* ¶ 28.) In August 2018, the Toths received a notice from Virginia Credit Union that their application for a loan modification had been denied on the grounds that their monthly income was insufficient. (*Id.* ¶ 32.) After the Toths appealed the denial of a loan modification, they received notice in December 2019 that Virginia Credit Union had denied their appeal for the same reasons the original application was denied. (*Id.* ¶ 34.)

Based on these events, the Toths bring two counts against the Defendants, including:

(1)　　Breach of Contract (against both Defendants) (Count I); and

---

[6] Although the Toths do not attach the cited Promissory Note or Deed of Trust, Defendants attach copies of the documents to their Motions to Dismiss. (ECF Nos. 31, 33.) In the interest of judicial efficiency and because the Toths do not dispute the accuracy of the attachments, the Court will consider the Promissory Note (ECF No. 31-1), and Deed of Trust (ECF No. 31-2), when analyzing the instant Motions. *See Ostrzenski v. Seigel*, 177 F.3d 245, 252 (4th Cir. 1999) (noting a policy of resolving disputes on their merits as opposed to technicalities).

Defendants also attach a default notice that they say they sent to the Toths. (ECF No. 31-3.) "[A] court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citations omitted); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (reiterating that the Court may also properly "consider documents that are explicitly incorporated into the complaint by reference . . . and those attached to the complaint as exhibits").

In opposition, the Toths state that the default notice attached by the Defendants "does not appear to be the letter that they received." (Resp. 13, ECF No. 34.) Because the Toths contest the accuracy of this attachment, the Court will not consider it at this procedural juncture.

4

(2) Violation of Federal Debt Collection Practices Act (against Cenlar) (Count II). (*See id.* 45–60, 62–73.)

As redress for their Breach of Contract Claim, the Toths seek damages "in the amount of their home," court costs, and attorney's fees. (*Id*. 14.) The Toths seek damages of $1,000 per violation as redress for their FDCPA claim against Cenlar. (*Id.* ¶ 74.)

**B.     Procedural Background**

On March 5, 2020, the Toths, proceeding *pro se*, filed a Complaint with at least thirteen counts against both Defendants. (*See* Compl., ECF No. 1.) On April 27, 2020, Virginia Credit Union filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 14.) The next day, on April 28, 2020, Cenlar also filed their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 17.)

On May 12, 2020, the Toths filed a Motion for Extension (the "Motion for Extension"), seeking additional time to respond to the Defendants' Motions to Dismiss. (ECF No. 19.) On May 21, 2020, the Court granted the Motion for Extension, giving the Toths an additional twenty-five (25) days to respond. (ECF No. 21.) Despite the extension, the Toths did not timely respond, and the Court ordered the Toths to "show cause why the Court should not grant either or both [Motions]." (July 10, 2020 Order 2, ECF No. 22.) On July 31, 2020, the Toths responded to the Court's July 10, 2020 Order, citing a mailing error as the reason for their delay. (Resp. July 10, 2020 Order 2, ECF No. 23.) That same day, the Toths responded to the Motion to Dismiss, requesting leave to amend their Complaint. (*See* ECF No. 24.) On December 16, 2020, this Court granted the Toths leave to file an Amended Complaint and denied as moot Defendants' Motions to Dismiss. (Dec. 16, 2020 Order 3, ECF No. 28.)

On November 13, 2020, the Toths filed the First Amended Complaint against the Defendants. (Am. Compl.) On November 25, 2020, Virginia Credit Union and Cenlar filed the Motions to Dismiss pursuant to Rule 12(b)(6). (ECF Nos. 30, 32.) On December 16, 2020, the Toths responded. (ECF No. 34.) On December 23, 2020, Defendants replied. (ECF Nos. 35, 36.) For the reasons that follow, the Court will grant the Motions to Dismiss in their entirety.

## II. Standards of Review

### A. Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a Complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a Complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.") Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the Complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). This analysis is context-specific and

requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193 (citation omitted). The Court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 676–79; *see also Kensington*, 684 F.3d at 467 (finding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the Complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *Kolon Indus.*, 637 F.3d at 440)).

B. **Obligation to Construe *Pro Se* Pleadings Liberally**

Because the Toths proceed *pro se* in the Motion, the Court liberally construes their filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (internal quotation marks and citations omitted)). Nonetheless, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts that set forth a claim cognizable in a federal district court. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (outlining pleading requirements under Federal Rule of Civil Procedure 8 for "all civil actions"). A *pro se* plaintiff litigant must allege facts sufficient to state a cause of action. *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999) (citation omitted). The Court cannot act as a *pro se* litigant's "advocate and develop, *sua sponte*, statutory and constitutional claims that the [litigant] failed to clearly raise on the face of [the] complaint." *Newkirk v. Cir. Ct. of Hampton*, No. 3:14cv372, 2014 WL 4072212, at *1 (E.D. Va. Aug. 14, 2014) (internal quotation marks and citations omitted).

## III. Analysis

Defendants seek dismissal of the Toths' claims under Rule 12(b)(6) on several grounds. Because the Toths do not plausibly allege that the notifications they received were insufficient as a matter of law, or that their contract with the Virginia Credit Union included a requirement to provide a loan modification, the Court will dismiss the breach of contract claims in Count I. The Court will also dismiss the FDCPA claim in Count II lodged against Cenlar because the Toths do not allege sufficient plausible facts to state a violation of the FDCPA.

### A. The Court Will Dismiss the Toths' Breach of Contract Claim Because the Toths Fail to Allege Breach of Any Legally Enforceable Obligation

Because, even read liberally, the Toths fail to state a claim that the Defendants breached any obligation under the Promissory Note or Deed of Trust, the Court will dismiss their breach of contract claim in Count I. "The elements for breach of contract in Virginia are '(1) a legally enforceable obligation of a defendant to a plaintiff, (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation.'" *Jones v. Fulton Bank, N.A.*, 565 F. App'x 251, 252 (4th Cir. 2014) (quoting *Filak v. George*, 267 Va. 612, 594 S.E.2d 610, 614 (2004)).

As to the first element for breach of contract, a legally enforceable obligation exists under the Deed of Trust. Section 22 of the Deed of Trust states that notice of acceleration of the debt shall specify:

(a) the default
(b) the action required to cure the default;
(c) a date not less than 30 days from the date the notice is given . . . by which default must be cured; and
(d) that failure to cure on or before the date specified . . . may result in acceleration . . . and sale of the Property [and] shall further inform . . . of the right to reinstate . . . and the right to bring a court action [along with] reasonable attorney's fees.

(Mem. Supp. Va. Credit Union Mot. Dismiss Ex. 2 "Deed of Trust" § 22, ECF No. 31-2.) Because the Toths and Defendants entered into the Deed of Trust and Promissory Note in exchange for the mortgage loan, a legally enforceable obligation exists.

But the Toths do not allege facts that plausibly show a breach of any obligations under the Deed of Trust. Read liberally, the Toths state that Defendants breached their obligations by providing insufficient notice of the "acceleration of the debt or their right to reinstatement, in accordance with the [Deed of Trust] requirements." (*Id.* ¶ 49.) Although the Parties dispute the contents of the notices sent to the Toths, the Toths admit that they received the October 2017, (ECF No. 31-3), and January 2018 Notices of Default, albeit without attaching either document to their Complaint. In these Notices, Defendants provided the Toths the status of their default, the amount in arrearage, and "the action required to cure the default"—the monthly payment schedule—in compliance with Section 22 of the Deed of Trust. (Deed of Trust § 22.)

Without more than bald conclusions, the Toths cannot "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Toths' allegation of breach of contract based on insufficiency of notice fails to raise any reasonable inference that the Defendants breached their obligations under the Promissory Note or Deed of Trust.[7] Therefore, the Court will dismiss the Toths' breach of contract claims in Count I.

---

[7] The Toths also allege a breach of contract based on the failure of the Defendants to provide a loan modification. (Am. Compl. ¶ 58.) However, neither the Deed of Trust nor the Promissory Note include any obligation on the part of the Defendants to provide a loan modification to the Toths. (*See* Promissory Note, ECF No. 31-1; *see also* Deed of Trust, ECF No. 31-2.) Thus, the Toths claim cannot prevail under this theory.

Under a liberal reading, however, the Toths' allegation that they were improperly denied a loan modification might implicate the requirements of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(f). Although the Court will dismiss the breach of contract claim, given their *pro se* status, it will grant the Toths leave to amend to clarify whether the loan modification denial complies with RESPA. Of course, absent any federal claim (such as one under RESPA or FDCPA), this Court would lack jurisdiction.

B.     **The Court Will Dismiss the Toths' FDPCA Claim Because the Toths Fail to Allege That Cenlar Qualifies a Debt Collector or that Cenlar Engaged in False, Deceptive or Misleading Representations in Connection with Collection of Debt**

The Court will dismiss the Toths' FDCPA Claim because they do not allege that Cenlar acted as a debt collector under the FDCPA. The FDCPA applies only to "debt collectors," which includes

> (1) a person whose *principal purpose* is to collect debts; (2) a person who *regularly* collects debts *owed to another;* or (3) a person who collects *its own debts*, using *a name other than its own* as if it were a debt collector.

*Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131 (4th Cir. 2016), *aff'd* 137 S. Ct. 1718 (2017) (emphasis in original); *see also* 15 U.S.C. § 1692a(6). The United States Court of Appeals for the Fourth Circuit held, and the Supreme Court of the United States affirmed, that creditors collecting debt on their own behalf do not qualify as "debt collectors" for the purposes of the FDCPA. *Henson*, 817 F.3d at 134. Whether a company qualifies as a debt collector "is ordinarily based on whether a person collects debt on behalf of others or for its own account, the main exception being when the 'principal purpose' of the person's business is to collect debt" rather than the default status of the debt. *Id.* at 135.

The Toths do not plausibly allege that Cenlar qualifies as a debt collector under the FDCPA. Although the Toths state that Cenlar "collects debts for other businesses," (Am. Compl. ¶ 3), they admit that "the servicing rights [to their mortgage loan] were sold to Cenlar." (*Id.* ¶ 46.) This admission creates the reasonable inference that Cenlar acted on its own behalf as a creditor in attempting to collect debts from the Toths. (*Id.*) Further, the Toths do not provide that Cenlar principally collects debts, alleging instead that Cenlar "services mortgage loans." (*Id.* ¶ 3.) The Amended Complaint also does not show that Cenlar was using a name other than its own to collect debts from borrowers. (*See generally* Am. Compl.) It has been well

10

established, in this Court as well as others, that "[t]he FDCPA does not create a cause of action against creditors," and that "[t]he FDCPA only imposes liability on businesses or groups whose 'principal purpose . . . is the collection of any debts.' This generally excludes 'creditors, mortgagors, and mortgage servicing companies.'" *Hardnett v. M&T Bank*, 204 F. Supp. 3d 851, 860 (E.D. Va. 2016) (Lauck, J.) (citations omitted). Thus, because the Toths do not allege that Cenlar acted as more than a creditor, the Toths cannot allege sufficient plausible facts to establish that Cenlar qualifies as a debt collector under the FDCPA.

Even if Cenlar qualified as a debt collector under the FDCPA, the Toths do not allege more than bald conclusions of Cenlar's violations of the FDCPA. Section 1692e of the FDCPA prohibits the use of "any false, deceptive, or misleading representation in connection with the collection of any debt." 15 U.S.C. § 1692e. The Toths allege that Cenlar violated the FDCPA requirements in 15 U.S.C. § 1692e by "quoting incorrect amounts of arrearages, [which] is a false, deceptive, or misleading representation or means." (Am. Compl. ¶ 73.) However, the Toths do not provide any further factual allegations that would allow the Court to reasonably infer that Cenlar falsely quoted the arrearages nor do the Toths provide any evidence indicating the correct amounts. Additionally, violations of Section 1692e "are not actionable unless the misrepresentations are material." *Richardson v. Shapiro & Brown, LLP*, 751 F. App'x 346, 350 (4th Cir. 2018). Without any allegations as to the purportedly false amount, the Court cannot conduct a materiality analysis.[8]

---

[8] Although the Court will dismiss the Toths Amended Complaint because they do not allege sufficient facts to support a breach of contract or FDCPA claim, the Toths' FDCPA count also appears to be time-barred. The FDCPA requires a plaintiff to bring a claim "within one year from the date on which the violation occurs." 15 U.S.C. §1692k(d). "This language 'unambiguously sets the date of the violation as the event that starts the one-year limitations period." *Bender v. Elmore & Throop, P.C.*, 963 F.3d 403, 407 (4th Cir. 2020) (quoting *Rotitske v. Klemm*, 140 S. Ct. 355, 360 (2019)). The Toths' FDCPA claim rests on Cenlar's allegedly

## IV. Conclusion

For the foregoing reasons, the Court will grant the Defendants' Motions to Dismiss (ECF Nos. 30, 32). The Court will dismiss the Amended Complaint, (ECF No. 29), without prejudice.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: July 12, 2021
Richmond, Virginia

---

fraudulent reporting of arrearages in notices to the Toths, the most recent of which the Toths received in January 2018. Because the Toths brought the instant case in March 2020, more than one-year after receiving the January 2018 Notice, the Toths' FDCPA allegations in Count Two appears to be, without more, time-barred.

12